OPINION
{¶ 1} Appellant OHIC Insurance Company ("OHIC") appeals the decision of the Stark County Court of Common Pleas which granted appellees Keith Welsh's, et al., motion for summary judgment and denied OHIC's motion for summary judgment. The following facts give rise to this appeal.
 {¶ 2} An accident occurred on January 7, 1997. At the time of the accident, Keith and Fannie Welsh resided with David and Cathleen Welsh, Keith Welsh's parents. Keith, Fannie and Cathleen were employees of Alliance Community Hospital. The accident occurred when Fannie Welsh was driving home from work, in an automobile owned by her husband, Keith Welsh. Angela Welsh, Fannie Welsh's daughter, was also a passenger in the vehicle. The accident was the result of the negligence of Thomas Sherwood. Following the accident, Fannie Welsh prematurely gave birth to Eleni Welsh. Eleni died a few hours after delivery.
 {¶ 3} Sherwood had automobile liability coverage with limits of $100,000 per person and $300,000 per accident. Keith Welsh, as the administrator of the Estate of Eleni Welsh, settled with the tortfeasor for the liability limits of $100,000. The Stark County Probate Court divided this settlement among Keith and Fannie Welsh, the parents of Eleni Welsh; and Cathleen and David Welsh, the paternal grandparents of Eleni Welsh. Veneta Lalli, the maternal grandmother of Eleni Welsh, did not receive any of the settlement proceeds nor did she attend the hearing in probate court.
 {¶ 4} On June 22, 2001, appellees filed a declaratory judgment action in the Stark County Court of Common Pleas, seeking coverage, under nine policies, pursuant to R.C. 3937.18 and the Ohio Supreme Court's decision in Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660, 1999-Ohio-292. Alliance Community Hospital had the following policies in effect on the date of the accident: (1) a business auto policy providing UM/UIM coverage issued by Indiana; (2) a commercial general liability policy containing a non-owned and hired auto endorsement issued by OHIC; and (3) an umbrella policy issued by OHIC. Only appellees Keith, Fannie, Cathleen and David Welsh, in their individual capacities, and the Estate of Eleni Welsh sought damages under Indiana's policy.
 {¶ 5} David Welsh was employed by R. Kurtzman on the date of the accident. R. Kurtzman had the following policies in effect issued by The Insurance Company of the State of Pennsylvania ("ISOP"): (1) a business automobile policy; and (2) a commercial general policy.
 {¶ 6} Veneta Lalli was employed by Coastal Pet Products, Inc., ("Coastal Pet") on the date of the accident. Coastal Pet had the following policies in effect issued by Westfield Insurance Company ("Westfield"): (1) a business automobile policy providing UM/UIM coverage; (2) a commercial general liability policy; and (3) a commercial umbrella policy. Veneta Lalli also sought UIM benefits under her personal auto policy issued by Allstate Insurance Company ("Allstate").
 {¶ 7} Cathleen and David Welsh, as resident family members, sought UIM coverage under the business automobile policy issued by Indiana to Alliance Community Hospital, the commercial general liability policy and the umbrella policy issued by OHIC to Alliance Community Hospital. In their complaint for declaratory judgment, appellees requested the trial court order the parties to binding arbitration to determine the issue of total damages.
 {¶ 8} All parties filed motions for summary judgment. On October 18, 2002, the trial court filed its judgment entry granting appellees' motion for summary judgment, and denying ISOP, OHIC, Westfield, Indiana and Allstate's motions for summary judgment. The trial court also ordered all parties to binding arbitration to determine the issue of total damages. The trial court did not determine whether the policies must pay on a primary, excess or pro rata basis.
 {¶ 9} Indiana[1], OHIC, Westfield[2] and ISOP[3] all filed separate Notices of Appeal. The matter currently under consideration concerns the appeal filed by OHIC. OHIC raises the following assignments of error for our consideration:
 {¶ 10} "I. WHETHER THE TRIAL COURT SHOULD HAVE GRANTED SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLANT OHIC INSURANCE COMPANY BECAUSE PLAINTIFFS-APPELLEES ARE NOT ENTITLED TO UNDERINSURED MOTORIST COVERAGE UNDER THE OHIC POLICIES?
 {¶ 11} "II. WHETHER THE TRIAL COURT SHOULD HAVE DENIED SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS-APPELLEES BECAUSE THEY ARE NOT ENTITLED TO UNDERINSURED MOTORIST COVERAGE UNDER THE OHIC POLICIES?"
 "Summary Judgment Standard" {¶ 12} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 13} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 14} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. It is based upon this standard that we review OHIC's assignments of error.
 I {¶ 15} Contained within OHIC's first assignment of error are several sections and subsections. We shall attempt to address them generally in the order presented.
 {¶ 16} We begin by noting the trial court considered OHIC's commercial general liability policy ("CGL") which included a Hired And Non-Owned Auto Endorsement ("Endorsement") as two separate policies each providing $1,000,000 of coverage. Appellees concede the Endorsement is not a separate policy. Appellees' Brief at 12. Accordingly, we reverse that part of the trial court's judgment which declared $1,000,000 of coverage was available under the Endorsement, separate from and in addition to the CGL policy.
 {¶ 17} We begin our analysis by finding OHIC's CGL policy is an automobile liability or motor vehicle policy, pursuant to Selander v.Erie Ins. Group (1999), 85 Ohio St.3d 541, 1999-Ohio-287, under the pre- H.B. 261 version of R.C. 3937.18, in effect at the time the policy was issued. Because OHIC did not offer UM/UIM coverage in the form required by Linko v. Idem. Ins. Co. of N. Am. (2000), 90 Ohio St.3d 445,2000-Ohio-92, UM/UIM coverage arises by operation of law pursuant to R.C. 3937.18. Likewise, because OHIC's umbrella policy provides excess coverage to its underlying CGL policy and it did not offer UM/UIM coverage, UM/UIM coverage also arises by operation of law under OHIC's umbrella policy.
 {¶ 18} In Section II, subsection A, OHIC asserts Keith, Fannie and Cathleen are not insureds under OHIC's CGL policy, including the Endorsement, because they were not acting within the scope of their employment as required in the applicable definitions of an "insured." We disagree.
 {¶ 19} In Scott-Pontzer v. Liberty Mutual Fire Ins. Co. (1999),85 Ohio St.3d 660, 1999-Ohio-292, the Ohio Supreme Court observed ". . . unlike the Liberty Fire policy [which contained a UM/UIM endorsement and specifically defined who is an insured], the Liberty Mutual umbrella policy did not contain an uninsured motorist coverage form that defined insured for purposes of underinsured motorist coverage." Id. at 665. When determining whether the restriction on coverage to employees acting within the scope of their employment found in the definition of "who is an insured" in Liberty Mutual's umbrella policy precluded underinsured motorist coverage which arose by operation of law, the Supreme Court held: "Thus, any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage. Id. at 666. (Emphasis added).
 {¶ 20} Similar to the Liberty Mutual policy in Scott-Pontzer, OHIC's CGL policy does not contain an uninsured motorist coverage form which defines who is an insured for purposes of underinsured motorist coverage. Like Liberty Mutual's policy, OHIC's CGL policy restricts coverage to employees acting within the scope of their employment. As stated, supra, the Ohio Supreme Court held "any language in the Liberty Mutual umbrella policy restricting insurance coverage only applied to liability coverage, not underinsured motorist coverage." FollowingScott-Pontzer, we conclude OHIC's language restricting coverage in the liability provisions does not apply to underinsured motorist coverage created by operation of law. It makes no difference whether the restrictive language appears within the definition of "who is an insured" in the liability section or appears within an exclusion provision in the liability section.[4],[5] See, Tulak v. Meridian Ins. Co., Tuscarawas App. No. 2002-AP-11-0088, 2003-Ohio-3290.
 {¶ 21} Accordingly, we find this portion of OHIC's argument unpersuasive and overrule this section of its first assignment of error.
 {¶ 22} OHIC next argues because appellees are not insureds under its CGL policy, they are not entitled to coverage under the umbrella policy. Having found supra, appellees are covered for underinsured motorist coverage under OHIC's CGL policy, we find they are also covered under OHIC's umbrella policy. Accordingly, this section of OHIC's first assignment of error is overruled.
 {¶ 23} OHIC next argues no UM/UIM coverage exists because appellees violated the notice and subrogation provisions of both its CGL and umbrella policies.
 {¶ 24} Having determined UM/UIM coverage arises by operation of law under both policies, this Court has previously found such provisions are unenforceable. See Pelc v. Hartford Fire Ins. Co., Stark App. No. 2002CA00142, 2003-Ohio-764; Green v. Westfield Ins. Co., Stark App. No. 2002CA00114, 2002-Ohio-6179. We adhere to our prior decisions.
 {¶ 25} Next, OHIC argues it has no legal liability pursuant to R.C. 3937.18 because the two year limitations period for a wrongful death action [R.C. 2151.02(D)] has passed. As such, OHIC argues because appellees were no longer legally entitled to recover against the tortfeasor, they are not entitled to UM/UIM coverage by operation of law. We disagree.
 {¶ 26} OHIC maintains appellees are not legally entitled to recover because the two-year limitations period contained in the wrongful death statute, R.C. 2125.02(D), expressly provides, "[a]n action for wrongful death shall be commenced within two years after the decedent's death." Appellees' wrongful death cause of action accrued on January 7, 1997, the date of Eleni Welsh's death. Appellees had until January 7, 1999, in which to file a wrongful death claim. However, appellees did not file their declaratory judgment action until June 25, 2001, well beyond the statute of limitations for a wrongful death action.
 {¶ 27} Appellees respond that the phrase "legally entitled to recover" has nothing to do with the statute of limitations of the tortfeasor and the fact the statute of limitations has expired against the tortfeasor does not mean appellees are no longer legally entitled to recover. Instead, appellees contend the phrase "legally entitled to recover" means that appellees are able to prove the tortfeasor was at fault and, as a result of the tortfeasor's negligence, they have been damaged.
 {¶ 28} Our research indicates the phrase "legally entitled to recover" appears, in the first version of R.C. 3937.18, enacted by the General Assembly in 1965. However, the General Assembly first statutorily defined the phrase "legally entitled to recover," in 1994, when it enacted S.B. 20. This version of R.C. 3937.18 provides "* * * a person is legally entitled to recover damages if he is able to prove the elements of his claim that are necessary to recover damages from the owner or operator of the uninsured motor vehicle."
 {¶ 29} Although the statute failed to define the phrase until 1994, the Ohio Supreme Court defined the phrase in 1984. In the case ofSumwalt v. Allstate Ins. Co. (1984), 12 Ohio St.3d 294, which interpreted a pre-S.B. 20 version of R.C. 3937.18, the Court held the phrase "legally entitled to recover" "* * * means that the insured must be able to prove the elements of her claim necessary to recover damages. * * *" Id. at syllabus. In 1991, and 2001, the Court reaffirmed this definition of "legally entitled to recover" in Kurrent v. Farmers Ins. of Columbus,Inc. (1991), 62 Ohio St.3d 242; and Ohayon v. Safeco Ins. Co. ofIllinois, 91 Ohio St.3d 474, 2001-Ohio-100.
 {¶ 30} In determining whether an insured is legally entitled to recover benefits under a policy of insurance, it is necessary to consider whether such claim is made in a negligence case or a wrongful death case. In a negligence case, the injured party's claims are determined by common law; that is, duty, breach of duty, proximate cause and damages.Karafa v. Toni, Cuyahoga App. No. 80664, 2003-Ohio-155, at ¶ 19. The statute of limitations is not an element of a negligence case. Id. Instead, it is a defense to it. Id. "The statute of limitations is a statutory creation designed to limit the exercise of the right to pursue recovery for the damages resulting from the tortfeasor's negligence." Id.
 {¶ 31} Therefore, in a negligence case, if an injured party can prove the elements of his or her claim against the tortfeasor, the injured party has met the requirement that he or she is legally entitled to recover. The failure to preserve the statute of limitations, in a negligence case, does not preclude a claim against the insurance company because the failure to do so falls under the issue of subrogation. According to Ferrando v. Auto-Owners Mut. Ins. Co, 98 Ohio St.3d 186, 2002-Ohio 7217, the failure to preserve the statute of limitations' defense requires proof of prejudice.
 {¶ 32} In Heidt v. Federal Ins. Co., Stark App. No. 2002CA00314, 2003-Ohio-1785, this Court addressed the issue of whether the failure to file a lawsuit within the two-year statute of limitations, in a negligence case, precluded coverage because the injured party was no longer legally entitled to recover. Id. at ¶ 45. We analyzed this issue as a failure to protect the insurance company's subrogation rights and remanded the matter in order for the trial court to apply the Ferrando analysis. Id. at ¶ 57.
 {¶ 33} However, a wrongful death case presents a different analysis due to the special nature of a wrongful death claim. As early as 1947, the Ohio Supreme Court recognized this distinction in the case of Sabol v. Pekoc (1947), 148 Ohio St. 545. In Sabol, the Court explained this distinction as follows:
 {¶ 34} "* * * [T]his wrongful death act creates a right which is unknown to the common law and had never in any way been recognized in Ohio prior to 1851. It is a recognized rule that a statute in derogation of common law, or which gives a right unknown to the common law, must be applied strictly in accord with all its essential terms." Id. at 552.
 {¶ 35} One of the essential terms of Ohio's wrongful death statute is the time frame within which a wrongful death action must be filed. According to R.C. 2125.02(D), an action for wrongful death must be commenced within two years after a decedent's death. The Ohio Supreme Court, in Sabol, found this two-year requirement to be an essential element of the action, stating:
 {¶ 36} "That language does not strictly constitute a time limitation on the bringing of the action; it expresses an integral element of the right of the action itself and if an action is not brought within two years from the death of the decedent it must fail, not because a statute of limitations provides the time within which it must be brought but because the time limit is of the very essence of the action. If this is so, the time limitation is not merely a matter of defense, which must be raised by demurrer or answer and which is waived if not so raised, but is a condition precedent to bringing the action, and the question can be raised at any time during the progress of the action. The lapse of more than two years between the death and the filing of the petition defeats the action for the reason that an essential element of the action as established by the statute is absent." Id.
 {¶ 37} Of the cases cited by appellees, only two concern a wrongful death cause of action: Hatcher v. Grange Mut. Cas. Co., (Dec. 14, 1993), Franklin App. No. 93 AP-882; and Ohio Farmers Ins. Co. v.Binegar (Jan. 7, 1994), Montgomery App. No. CA 13906. Both of cases rely upon the Ohio Supreme Court's decision in Lane v. Grange Mut. Cos.
(1989), 45 Ohio St.3d 63. In Lane, the plaintiff was involved in an accident with an underinsured motorist. Id. at 63. More than two years after the accident, the plaintiff sent a letter to her insurance carrier, Grange Mutual Companies ("Grange"), asserting a claim pursuant to the underinsured motorist provisions of her policy. Id. Grange denied the claim because it was not filed within two years of the accident. Id. In doing so, Grange relied upon the following provision of its policy:
 {¶ 38} "* * * No suit or action whatsoever or any proceeding instituted or processed in arbitration shall be brought against the company for the recovery of any claim under this coverage * * * unless same is commenced within the time period allowed by the applicable statute of limitations for bodily injury or death actions in the state where the accident occurred." Id.
 {¶ 39} The Lane plaintiff brought a declaratory judgment action to clarify her rights under the policy. Id. at 63-64. The trial court found the policy language ambiguous and unenforceable. Id. at 64. The court of appeals reversed. Id. The Ohio Supreme Court found Grange's policy did not inform its policyholders the amount of time available for commencement of an action, and a person lacking knowledge of the Revised Code would not know that, generally, an action for bodily injury must be commenced within two years. Id. The Court concluded Grange's policy was unclear and ambiguous, and failed to shorten the statute of limitations, which on a contract action is fifteen years. Id. at 65.
 {¶ 40} As noted above, both the Hatcher and Binegar cases rely upon the Lane decision. In Hatcher, due to a change in the law, the plaintiff filed a UM claim on behalf of the decedent's children three years after the accident, which caused the death of the decedent. Id. at 1. The insurance company argued the plaintiff was not legally entitled to recover because the time for bringing a wrongful death action against the tortfeasor had expired. Id. at 2. The Tenth District Court of Appeals held in favor of the plaintiff and stated:
 {¶ 41} "Although Revised Code 3937.18 provided no guidance as to the meaning of the phrase `legally entitled to recover damages from the owners and operators of uninsured motor vehicles,' the Ohio Supreme Court has interpreted these words to mean that `* * * the plaintiff must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of the damages.' Undisputedly, plaintiff can establish fault on the part of Jordan [the tortfeasor] giving rise to the children's damages and can prove the extent of these damages." Id. at 3.
 {¶ 42} The Hatcher court reasoned that the legal effect of the insurer's argument was to reduce from fifteen years to two years the time in which an action may be brought for UM benefits on the insurance contract at issue. Id. The court noted such a reduction is permissible, but may be accomplished only by clear and unambiguous language in the insurance policy. Id. The court further found the policy under consideration did not meet the clear and unambiguous standard set forth in the Lane decision because it did not contain a provision purporting to limit the time for bringing a claim for UM coverage. Id.
 {¶ 43} The second case cited by appellees concerning a wrongful death cause of action is the Binegar case. In Binegar, the Second District Court of Appeals was asked to determine whether the insurer's policy required, as a condition of UIM coverage, that a timely wrongful death action be brought against the tortfeasor. Id. at 3. In deciding this issue, the court interpreted the following language of the insurance contract: "* * * payment shall be made for `damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury caused by the accident'." Id. at 5.
 {¶ 44} The Binegar court held the failure to timely file a wrongful death action against the tortfeasor does not bar recovery of UIM benefits. Id. Although an insurance company can limit the time in which one may institute an action on contract, the language under consideration did not do so. Id. Specifically, the court determined the clause under consideration did not satisfy the test for clarity set forth in the Lane decision since there was no language in the clause to put the insured on notice that the clause established a time limit within which to make a claim for underinsured motorist benefits. Id. Therefore, the court concluded a fifteen year statute of limitations applied. Id.
 {¶ 45} We find both the Hatcher and Binegar cases distinguishable from the case sub judice for the following two reasons. First, both cases fail to apply the definition of "legally entitled to recover" as adopted by the Ohio Supreme Court in the Sumwalt case. In Hatcher, the court referred to the Sumwalt decision, but failed to adopt the definition of the phrase, as set forth by the Court in the syllabus. Instead, the court referred to a Louisiana case cited by the Sumwalt Court, and held "legally entitled to recover" means the plaintiff be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of damages. Hatcher at 2, citing Sumwalt at 295-296.
 {¶ 46} Thus, the Hatcher decision did not use the definition of the phrase "legally entitled to recover" as adopted by the Ohio Supreme Court in Sumwalt. The Supreme Court, in the syllabus of Sumwalt, defined "legally entitled to recover" to mean the plaintiff "* * * must be able to prove the elements of her claim necessary to recover damages. * * *"
 {¶ 47} Clearly, the definition adopted by the Hatcher decision is less stringent in its requirements than the definition set forth in Sumwalt as it only requires a plaintiff to establish fault, damages and the extent of the damages. Whereas, Sumwalt requires a plaintiff to prove the elements of his or her claim necessary to recover damages. That is, the elements of a claim for bodily injury or wrongful death. In Hatcher, the court concluded the plaintiff was legally entitled to recover because the tortfeasor was at fault. Id. However, in reaching this conclusion, the court never considered whether the plaintiff could prove the elements of his claim for wrongful death.
 {¶ 48} In Binegar, the court failed to consider the definition of "legally entitled to recover" as set forth in the Sumwalt decision. Instead, the court found the phrase under consideration failed to satisfy the test for clarity set forth in the Lane decision because the clause contained no language to put the insured on notice that a time limit existed within which to make a claim for UIM benefits. Thus, the Binegar court also failed to determine the issue of whether the plaintiffs were able to prove the elements of their claim for wrongful death.
 {¶ 49} The Hatcher and Binegar cases are also distinguishable from the instant action as they were decided prior to the effective date of S.B. 20, which was the first version of R.C. 3937.18 to define the phrase "legally entitled to recover." The incorporation of the definition of the phrase into the statute in 1994, changed the analysis from a contract interpretation to a statutory interpretation. Under a contract analysis, it is basic insurance law when provisions of an insurance contract are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured who is seeking coverage. Burris v. Grange Mut. Cos. (1989),46 Ohio St.3d 84, 89, overruled on other grounds in Savoie v. GrangeMut. Ins. Co. (1993), 67 Ohio St.3d 500. Thus, under a contract analysis, any ambiguity in the use of the phrase "legally entitled to recover" must be decided in favor of the insured.
 {¶ 50} However, under a statutory analysis, the paramount goal is to ascertain and give effect to the legislature's intent in enacting the statute. Brooks v. Ohio State Univ. (1996), 111 Ohio App.3d 342, 349. In so doing, however, the court must first look to the plain language of the statute itself to determine the legislative intent. Burrows v. Indus.Comm., 78 Ohio St.3d 78, 81, 1997-Ohio-310; In re Collier (1993),85 Ohio App.3d 232, 237. Thus, if the language used in a statute is clear and unambiguous, the statute must be applied as written and no further interpretation is necessary. Burrows at 80. "It is only where the words of a statute are ambiguous, uncertain in meaning, or conflicting that a court has the right to interpret a statute." Brooks at 349.
 {¶ 51} Unlike the Hatcher and Binegar cases, the matter sub judice involves a statutory analysis and not a contract analysis since the phrase "legally entitled to recover" is defined in R.C. 3937.18(A)(1). Therefore, we must first determine whether the language used to define the phrase "legally entitled to recover" is clear and unambiguous. We find it is not.
 {¶ 52} We also note we find the Lane decision of little persuasive value because it does not address the meaning of the phrase "legally entitled to recover"; involves contract interpretation as opposed to statutory interpretation; and pre-dates the S.B. 20 version of R.C.3937.18.
 {¶ 53} Prior to explaining our reason for finding the phrase "legally entitled to recover" ("phrase") ambiguous, we find a more fundamental flaw in OHIC's argument which is independent of the issue of whether the phrase is ambiguous. R.C. 3937.18(A)(1), (2) provides: "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
 {¶ 54} "(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy.
 {¶ 55} "For purposes of division (A)(1) of this section, a person is legally entitled to recover damages if he is able to prove the elements of his claim that are necessary to recover damages from the owner or operator of the uninsured motor vehicle. The fact that the owner or operator of the uninsured motor vehicle has an immunity, whether based upon a statute or the common law, that could be raised as a defense in an action brought against him by the person insured under uninsured motorist coverage does not affect the insured person's right to recover under his uninsured motorist coverage.
 {¶ 56} "(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."
 {¶ 57} The "legally entitled to recover" phrase OHIC relies upon is only found in division (A)(1) of R.C. 3937.18. Division (A)(1) only applies to "uninsured motorist coverage." Division (A)(2) applies to "underinsured motorist coverage." Unlike division (A)(1), the phrase "legally entitled to recover" does not appear in division (A)(2). Had the legislature intended the phrase to apply to underinsured motorist coverage, it would have included "legally entitled to recover" language in division (A)(2). The fact the legislature specifically chose to statutorily define "legally entitled to recover" only for purposes of division (A)(1) (uninsured motorist coverage) further indicates the legislature did not intend the "legally entitled to recover" qualification to apply to underinsured motorist coverage. Because the case sub judice involves underinsured motorist coverage as set forth in division (A)(2), OHIC's argument is without merit.
 {¶ 58} Assuming, arguendo, the statutory "legally entitled to recover" qualification does apply to underinsured motorist coverage, we find the definition ambiguous. The statute does not define the point in time at which the determination of an insured's legal right to recover against the owner or operator of the uninsured vehicle must be made. Although division (A)(1) uses the present tense twice in conjunction with the phrase "legally entitled to recover," it does not indicate at what point in time the determination is to be made. R.C. 1.43(C) provides, "Words in the present tense include the future."
 {¶ 59} We suggest there are three possible points in time when the determination whether appellees are "legally entitled to recover" may be made.[6]The first is when the accident occurs (1/7/97). The second is when appellees' UIM claim accrues (8/9/97).[7] The third, as argued by OHIC, is when appellees' statutory tort cause of action for wrongful death against the tortfeasor expires because of the two year time period element contained within the wrongful death statute (1/7/99).
 {¶ 60} If either the first or second possible points in time applies, appellees are "legally entitled to recover" at either of those points in time because they were then able to prove both liability and damages. See, Sumwalt v. Allstate Ins. Co. (1984), 12 Ohio St.3d 294. Because of the ambiguity in the statute as to when the insured must be "legally entitled to recover," and because R.C. 3937.18 is a remedial statute to be liberally construed to give effect to the remedy it provides, we conclude the fact appellees did not seek UIM coverage from OHIC until after the expiration of the two year statute of limitations contained within R.C. 2125.02(d) as an element thereof, does not serve as a basis to deny UM/UIM coverage.
 {¶ 61} Furthermore, the instant action is a contract action against the insurer, not a tort action against the tortfeasor or owner of the tortfeasor's vehicle. The statute's definition of "legally entitled to recover" references an insured's tort cause of action against the owner or operator of the uninsured motor vehicle, not the insured's contract cause of action against the insurer.
 {¶ 62} For all the above reasons, we overrule this section of OHIC's first assignment of error.
 {¶ 63} The next section of OHIC's first assignment of error deals with whether OHIC's policies provide excess or pro-rata coverage should this Court determine coverage does exists. Also contained within this section is OHIC's claim it is entitled to set off all amounts received from the tortfeasor.
 {¶ 64} In its October 18, 2002 Judgment Entry, the trial court held, in pertinent part:
 {¶ 65} "With regard to the argument that any coverage afforded under Westfields' policies and the OHIC policies is subject to setoff and is excess and cannot be stacked, the Court finds against Westfield and OHIC and denies the motions for summary judgment with regard to said arguments."
 {¶ 66} The only action before the trial court was appellee's complaint for declaratory judgment. The complaint requested a declaration appellees were insured for underinsured motorist purposes under the listed policies of the named defendants insurers, including OHIC, and to declare the limits with respect to each insurer's policy(s).[8] The complaint did not request a declaration concerning whether any coverage(s), if found to exits, was (were) subject to set-off or to declare which coverage(s) was (were) primary or excess, nor to declare what each insurer's proportionate share would be. Our review of the record reveals OHIC never requested any such declarations via a counter-claim and/or third party complaint against any other defendant insurer. OHIC did raise some of these issues as an affirmative defense and in its motion for summary judgment in the event coverage under its policy(s) was found to exist. We find these issues were not properly justiciable by the trial court at the time it rendered its judgment on October 18, 2002. Asserting an affirmative defense is not equivalent to seeking declaratory relief. Although OHIC's summary judgment motion sought declaratory judgment as to these issues, we find the motion for summary judgment is not a proper procedural mechanism to bring these issues before the trial court at this stage of the proceedings. Accordingly, we vacate the portion of the trial court's entry regarding set-off, excess and stacking with regard to the OHIC policies. Such issue will become ripe for adjudication by the trial court after an award of damages in favor of appellees. Accordingly, we sustain this section of OHIC's first assignment of error without determining the merits in respect thereto.
 {¶ 67} Finally, in the last section of OHIC's first assignment of error, OHIC argues its umbrella policy is subject to a $25,000 self insured retention because of its deductible in that amount. This Court considered and rejected this same argument in German v. Therm-O-Disc,Inc., Richland App. No. 01CA51-2, 2002-Ohio-1848. Upon reconsideration, we adhere to our decision in that case. Accordingly, this section of OHIC's first assignment of error is overruled.
 II. {¶ 68} OHIC's second assignment of error contains two sections. In the first section, OHIC argues appellees are not entitled to summary judgment in their favor because they failed to identify any applicable language in the OHIC policies giving rise to coverage. However, appellees did provide the trial court with all of OHIC's policies. Because appellees arguments were premised on UM/UIM coverage by operation of law, they assert much of the actual language of the policies is not germane.
 {¶ 69} As noted supra, this Court reviews a decision on a motion for summary judgment de novo. Through their briefs to this Court and this Court's review of the policies, we find the applicable language to support or deny coverage has been amply identified. Accordingly, we overrule this section of OHIC's second assignment of error.
 {¶ 70} In its final section, OHIC argues appellees are not entitled to arbitration of their claims against it. We note appellees specifically requested an order to arbitration in their complaint for declaratory relief, not just in their motion for summary judgment.
 {¶ 71} The OHIC policies do not contain an arbitration clause. Appellees argue because OHIC's umbrella is excess to the Indiana policy and the Indiana policy provides for binding arbitration, the OHIC umbrella follows the Indiana policy thereby also subjecting OHIC to binding arbitration.
 {¶ 72} Given this Court's decision to remand Welsh v. IndianaIns. Co., Stark App. No. 2002CA00370, for a Ferrando analysis, we conclude the trial court's order referring OHIC to arbitration is premature. Therefore, we sustain this assignment of error and order that portion of the trial court's judgment ordering appellant to arbitrate vacated pending its decision, upon remand, of Stark App. No. 2002CA00370.
[1] Welsh v. Indiana, Case No. 2002CA00370
[2] Welsh v. Indiana, Case No. 2002CA00376
[3] Welsh v. Indiana, Case No. 2002CA00379
[4] Although not cited by the Ohio Supreme Court in Scott-Pontzer, our conclusion is by the fact the scope of employment contained in the Liberty Mutual umbrella policy was found within the definition of "Who Is An Insured" in the liability section. Scott-Pontzer v. Liberty MutualFire Ins. Co. (Jan. 20, 1998), Stark App. No. 1997CA00152, unreported at 4-5.
[5] We recognize this Court has held to the contrary in Dalton v.Travelers Ins. Co. (Dec. 23, 2002), Stark App. Nos. 2001CA00380, 2001CA00393, 2001CA00407, 2001CA00409; Pugh v. Erie Ins. Exchange, Stark App. No. 2002CA00134, 2002-Ohio-5929 at 3-4; and Pahler v. MotoristsMutual Ins. Co. Stark App. No. 2002CA00022, 2002-Ohio-5762. This panel respectfully concludes our colleagues incorrectly analyzed this issue.
[6] There may well be others but other possibilities are unnecessary to explore as they would only serve to augment the ambiguity exemplified by the three listed.
[7] See Haney v. Motorist Mut. Ins. Co. (June 24, 2003), Tuscarawas Cty App. No. 2002AP110093, 2003-Ohio-3412 unreported, in which this Court held a cause of action for underinsured motorist coverage occurs (accrues) when the tortfeasor's policy limits are exhausted. Id. at 2.
[8] The complaint also sought an order to arbitration.